UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

COURTNEY M. TRADER,

               Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

               Defendant.

Case No. 2:16-cv-00875-GMN-BWN

**REPORT AND RECOMMENDATION**

This matter was referred to the undersigned magistrate judge for a report of findings and recommendations under 28 U.S.C. § 636(b)(1)(B)-(C) and Local Rule IB 1-4. The case involves review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff Courtney M. Trader's ("Plaintiff's") application for disability insurance benefits under Titles II and XVI of the Social Security Act. The court has reviewed Plaintiff's motion for reversal and/or remand (ECF No. 21), filed October 13, 2016, the Commissioner's cross motion to affirm and opposition to Plaintiff's motion to remand (ECF Nos. 26, 27), filed January 31, 2017, and Plaintiff's reply (ECF No. 28), filed February 15, 2017.

I.     **BACKGROUND**

    **1. Procedural History**

        On August 22, 2011, Plaintiff applied for disability insurance benefits and supplemental security income under Title II of the Act, alleging an onset date of February 15, 2011. AR[1] 211-214, 215-224. The Commissioner denied Plaintiff's claims by initial determination on February 6, 2012. AR 175-179. Plaintiff requested reconsideration, which the Commissioner denied on March

---

[1] AR refers to the Administrative Record in this matter. (Notice of Manual Filing (ECF No. 18).)

26, 2013. AR 181-183, 184-186. A hearing was then held before an Administrative Law Judge (ALJ) on July 24, 2014. AR 87-112. On August 27, 2014, the ALJ issued a decision finding Plaintiff was not disabled. AR 65-86. On October 24, 2014, Plaintiff requested that the Appeals Council review the ALJ's decision. AR 57-64. The Appeals Council denied this request on January 14, 2016, making the ALJ's decision the final decision of the Commissioner. AR 51-56. Plaintiff, on April 16, 2016, commenced this action for judicial review under 42 U.S.C. §§ 405(g). (*See* Compl. (ECF No. 1).)

**2. The ALJ Decision**

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920.

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since February 15, 2011. AR 70.

At step two, the ALJ found that Plaintiff had the following severe impairments: shingles, seizure disorder, degenerative disc disease of the cervical spine, and adjustment disorder with depressed mood. *Id.*

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R., Part 404, Subpt. P, App. 1 (the listings). AR 72.

Next, the ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work with some exceptions. AR 74. Specifically, the ALJ found that Plaintiff could perform light work and adapt to routine work changes, except that she was unable to tolerate exposure to hazards such as heights and moving machinery; unable to climb ladders, ropes or scaffolds; and was limited to performing simple, routine, repetitive tasks in two-hour increments. *Id.* The ALJ also evaluated Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms and found these statements not entirely credible. AR 75.

At step four, and with the assistance of a vocational expert, the ALJ concluded Plaintiff could not perform her past relevant work as a helper in manufacturing. AR 79.

At step five, and with the assistance of the vocational expert, the ALJ found that there were jobs existing in significant numbers that someone with Plaintiff's vocational profile could perform. AR 79-80. The ALJ therefore found Plaintiff not disabled as defined in the Act. AR 80.

## II.    DISCUSSION

### 1.  Standard of Review

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides.

42 U.S.C. § 405(g). The court may enter "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The Ninth Circuit reviews a decision affirming, modifying, or reversing a decision of the Commissioner de novo. *See Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's

1    conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80

2    F.3d 1273, 1279 (9th Cir. 1996).

3         Under the substantial evidence test, findings must be upheld if supported by inferences

4    reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support

5    more than one rational interpretation, the court must defer to the Commissioner's interpretation.

6    *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human*

7    *Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether

8    the Commissioner could reasonably have reached a different conclusion, but whether the final

9    decision is supported by substantial evidence. It is incumbent on the ALJ to make specific

10   findings so that the court does not speculate as to the basis of the findings when determining if the

11   Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact

12   without explicit statements as to what portions of the evidence were accepted or rejected are

13   insufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should

14   be as comprehensive and analytical as feasible and, where appropriate, should include a statement

15   of subordinate factual foundations on which the ultimate factual conclusions are based . . . ." *Id.*

16   (*citing Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), cert. denied, 420 U.S. 931

17   (1975).).

18         **2. Disability Evaluation Process**

19        The individual seeking disability benefits has the initial burden of proving disability.

20   *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must

21   demonstrate the "inability to engage in any substantial gainful activity by reason of any medically

22   determinable physical or mental impairment which can be expected . . . to last for a continuous

23   period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual

24   must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. §

25   404.1514. If the individual establishes an inability to perform her prior work, then the burden

26   shifts to the Commissioner to show that the individual can perform other substantial gainful work

27   that exists in the national economy. *Reddick*, 157 F.3d at 721.

28

1    The ALJ follows a five-step sequential evaluation process in determining whether an

2    individual is disabled. *See generally* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140

3    (1987). If at any step the ALJ determines that he can make a finding of disability or nondisability,

4    a determination will be made, and no further evaluation is required. *See* 20 C.F.R. §

5    404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to

6    determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §

7    404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves

8    doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)-(b). If

9    the individual is engaged in SGA, then a finding of "not disabled" is made. *See Barnhart*, 540

10   U.S. at 24. If the individual is not engaged in SGA, then the analysis proceeds to step two. *See id.*

11   Step two addresses whether the individual has a medically determinable impairment that is severe

12   or a combination of impairments that significantly limits her from performing basic work

13   activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is not severe

14   when medical and other evidence establishes only a slight abnormality or a combination of slight

15   abnormalities that would have no more than a minimal effect on the individual's ability to work.

16   *Id.* § 404.1521; *see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); SSR 85-28, 1985 WL

17   56856 (Jan. 1, 1985).[2] If the individual does not have a severe medically determinable impairment

18   or combination of impairments, then a finding of "not disabled" is made. If the individual has a

19   severe medically determinable impairment or combination of impairments, then the analysis

20   proceeds to step three.

21       Step three requires the ALJ to determine whether the individual's impairment or

22   combination of impairments meet or medically equal the criteria of an impairment listed in 20

23   C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the

24   individual's impairment or combination of impairments meet or equal the criteria of a listing and

25

26   ───────────────

27   [2] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference as long as they are consistent with the Social Security Act and regulations.

28   *Bray*, 554 F.3d at 1223-24 (finding ALJ erred in disregarding SSR 82-41).

1    the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. §

2    404.1520(h). If the individual's impairment or combination of impairments does not meet or

3    equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step

4    four.

5         Before moving to step four, however, the ALJ must first determine the individual's

6    residual functional capacity (RFC), which is a function-by-function assessment of the individual's

7    ability to do physical and mental work-related activities on a sustained basis despite limitations

8    from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p, 1996 WL 374184 (July 2,

9    1996). In making this finding, the ALJ must consider all the relevant evidence, such as all

10   symptoms and "the extent to which the symptoms can reasonably be accepted as consistent with

11   the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a)*; see also* SSR 16-

12   3p, 2017 WL 5180304 (Oct. 25, 2017). To the extent that statements about the intensity,

13   persistence, or functionally limiting effects of pain or other symptoms are not substantiated by

14   objective medical evidence, the ALJ must make a finding on the credibility of the individual's

15   statements based on a consideration of the entire case record. The ALJ must also consider opinion

16   evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927.

17        Step four requires the ALJ to determine whether the individual has the RFC to perform

18   her past relevant work (PRW). *See* 20 C.F.R. § 404.1520(f). PRW means work performed either

19   as the individual actually performed it or as it is generally performed in the national economy

20   within the last 15 years or 15 years before the date that disability must be established. *See* 20

21   C.F.R. §§ 404.1560(b), 404.1565(a). In addition, the work must have lasted long enough for the

22   individual to learn the job and performed a SGA. *Id.* §§ 404.1560(b), 404.1565(a). If the

23   individual has the RFC to perform her past work, then a finding of "not disabled" is made. *Id.* §

24   404.1560(b)(3). If the individual is unable to perform any PRW or does not have any PRW, then

25   the analysis proceeds to step five.

26        The fifth and final step requires the ALJ to determine whether the individual is able to do

27   any other work considering her RFC, age, education, and work experience. 20 C.F.R. §

28   404.1520(g). If she is able to do other work, then a finding of "not disabled" is made. Although

the individual generally continues to have the burden of proving disability at this step, a limited

burden of going forward with the evidence shifts to the Commissioner. The Commissioner is

responsible for providing evidence that demonstrates that other work exists in significant numbers

in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42.

**3. Analysis**

**a. The ALJ Did Not Improperly Reject Dr. Fabella-Hicks' Opinion.**

Plaintiff's first argument regarding why the ALJ's decision should be reversed or

remanded is that the ALJ improperly rejected the opinion of one physician, Dr. Fabella-Hicks.

(ECF. No. 21 at 7.) Dr. Fabella-Hicks was an examining physician who performed a

psychological evaluation of the Plaintiff. AR 566-573. Plaintiff alleges that Dr. Fabella-Hicks

found, and the ALJ improperly rejected, that Plaintiff "would have difficulty with sustained

performance of even one-and-two step instructions." (ECF. No. 21 at 7.) The Commissioner

responds with a variety of arguments, including that Plaintiff inaccurately represents what Dr.

Fabella-Hicks wrote in her report. (ECF No. 26 at 3.) The Commissioner is correct; Plaintiff's

representation of what Dr. Fabella-Hicks found is inaccurate, and therefore, the ALJ could not

and did not reject this "finding," as explained below.

The ALJ considered Dr. Fabella-Hicks' report, found it to be well supported and

consistent with the medical evidence in the record, and gave it weight. AR 78. Further, the ALJ

did not expressly reject any portion of Dr. Fabella-Hicks' report. Indeed, the ALJ included the

relevant portion of Dr. Fabella-Hicks' prognosis, almost verbatim, in his decision. *Id.* Contrary to

Plaintiff's assertion, however, Dr. Fabella-Hicks did *not* find that Plaintiff "*would* have difficulty

with *sustained* performance of even one-and-two step instructions." (ECF No. 21 at 7 (emphasis

added).) Rather, Dr. Fabella-Hicks found that Plaintiff "*may* still have difficulty with *consistent*

*and sustained* performance" of one and two-step tasks, and Plaintiff's ability to complete

complex, detailed, and simple tasks "*would occasionally* be affected by her mental health

symptoms. In particular, [Plaintiff's] pace was below average and she needed to give effort to

concentrate." AR 571 (emphasis added). Thus, Dr. Fabella-Hicks did not find that Plaintiff would

definitively have difficulty with sustained performance of one and two-step tasks. Plaintiff's

1  assertion to the contrary derives from a misreading of Dr. Fabella-Hicks' report. (*See* ECF No. 21

2  at 7.)

3  For a similar reason, Plaintiff's argument that the ALJ erred by rejecting testimony from

4  the vocational expert also fails. (*See* ECF No. 21 at 7.) Plaintiff asserts that "when the vocational

5  expert considered Dr. Fabella-Hick's [sic] words, the vocational expert stated that [Plaintiff]

6  could not perform work in the jobs identified." (*Id.*) But Plaintiff misstated Dr. Fabella-Hicks'

7  report. The question Plaintiff posed to the vocational expert was: "[I]f someone had difficulty

8  with constant and sustained performance, would that eliminate those jobs?" AR 110. (The

9  vocational expert responded "yes." *Id.*) However, Dr. Fabella-Hicks only opined that Plaintiff

10  "*may* still have difficulty with consistent and sustained performance" and "would *occasionally* be

11  affected by her mental health symptoms." AR 571 (emphasis added). Thus, Plaintiff did not ask

12  the vocational expert a hypothetical question based on Dr. Fabella-Hicks' words, but rather posed

13  a hypothetical that misstated Dr. Fabella-Hicks' findings. Accordingly, it was proper for the ALJ

14  to disregard the vocational expert's response. *See Magallanes v. Bowen*, 881 F.2d 747, 756 (9th

15  Cir. 1989) ("The vocational expert's opinion about a claimant's residual functional capacity has

16  no evidentiary value if the assumptions in the hypothetical are not supported by the record.").

17  Even if Dr. Fabella-Hicks' report was ambiguous regarding the extent to which Plaintiff

18  would have difficulty performing tasks, "the ALJ is the final arbiter with respect to resolving

19  ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)

20  (resolving ambiguity based on equivocal testimony of doctor); *see also Magallanes*, 881 F.2d at

21  750 (ALJ is to resolve ambiguities). If the record supports more than one rational interpretation,

22  the court will defer to the ALJ's decision. *See Bayliss*, 427 F.3d at 1214 n.1. Here, it was rational

23  for the ALJ to find that Plaintiff would only "occasionally" be interrupted in her ability to

24  complete tasks due to mental health issues, because that's what Dr. Fabella-Hicks found. *See* AR

25  571. It was also rational for the ALJ to interpret Dr. Fabella-Hicks' report differently than

26  Plaintiff interprets it and not find that Plaintiff would have difficulty with "consistent and

27  sustained performance" (as even Dr. Fabella-Hicks equivocated on this). *See id.* Accordingly,

28

1   even assuming there was an ambiguity in Dr. Fabella-Hicks' opinion, the ALJ properly resolved

2   it by adopting a rational interpretation of it and incorporating this into his RFC-finding.

3           Moreover, the court finds that there was substantial evidence supporting the ALJ's RFC

4   determination about Plaintiff's mental health. Again, the ALJ found that Plaintiff had the RFC to

5   perform simple, routine, repetitive tasks in two-hour increments. AR 74. In addition to Dr.

6   Fabella-Hicks' prognosis (*see* AR 571), another examining physician's, Dr. Cross', report also

7   supports this conclusion. Dr. Cross found that Plaintiff was able to complete simple one and two-

8   step job instructions; maintain concentration, attention, persistence and pace; and perform work

9   activities on a consistent basis.[3] AR 394. The State Agency consultants also found that Plaintiff

10  could sustain simple tasks.[4] AR 147, 151-52. Accordingly, there is substantial evidence in the

11  record to support the ALJ's RFC-finding related to Plaintiff's mental health.

12                  **b. The ALJ Erred In Not Including a Lumbar Spine Impairment As A Severe**

13                      **Impairment, But This Error Was Harmless.**

14          The plaintiff's second argument is that the ALJ erred by not including a lumbar spine

15  impairment as one of Plaintiff's severe impairments. (ECF. No. 21 at 8.) Plaintiff argues that the

16  record, read as a whole, indicates that Plaintiff had a severe lumbar spine impairment. (*Id.* at 9.)

17  The Commissioner responds by stating, as an initial matter, that the ALJ did in fact find that

18  "Plaintiff's severe impairments included 'degenerative disc disease of the lumbar spine.'" (ECF

19  No. 26 at 5 (citing AR 70).) The Commissioner is mistaken on this point. The ALJ found that the

20  _____

21  [3] Plaintiff notes that Dr. Cross' report inaccurately states that Plaintiff was never suicidal. (ECF No. 21 at
    8.) While Plaintiff does not explain how this should change the court's analysis, it is worth noting that the

22  ALJ was aware of and considered the Plaintiff's previous suicidal ideation. AR 71.

23  [4] Plaintiff notes that one of the State Agency consultants, Dr. Solomon, provided his opinion before Dr.
    Fabella-Hicks. (ECF No. 28 at 4.) However, Plaintiff does not explain how this should affect the court's

24  analysis or cite any authority on this point. (*Id.*) Plaintiff also states that another State Agency consultant,
    Dr. Roldan, stated that this was a "close case" and the Plaintiff may decompensate with stress. (*Id.*) As a

25  result, Plaintiff concludes that the ALJ should have deferred to Dr. Fabella-Hicks' opinion. (*Id.*) As an
    initial matter, and as previously discussed, the ALJ did not reject Dr. Fabella-Hicks' opinion. Additionally,

26  when reviewed in its entirety, Dr. Roldan's conclusion about Plaintiff is almost identical to Dr. Fabella-
    Hicks'. Dr. Roldan found that Plaintiff is "capable of [c]omplex, [d]etailed, & [s]imple 1-2 step

27  instructions, although *may* have troubling sustaining attention/concentration for more than [s]imple." AR
    147 (emphasis added). As such, Plaintiff's arguments about Drs. Solomon and Roldan's reports do not

28  change the analysis.

Plaintiff had a severe impairment of "degenerative disc disease of the *cervical* spine." AR 70 (emphasis added). The ALJ did not find that Plaintiff had a severe impairment of the lumbar spine. Thus, the court must decide whether this was error.

As discussed above, the ALJ addresses whether a claimant has a "severe" impairment in step two of his analysis. An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Step two is "a de minimis screening device [used] to dispose of groundless claims, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." *Id.* at 687 (internal quotations and citations omitted) (reversing determination that plaintiff's impairments were not severe because medical evidence did not clearly establish this).

Here, the record demonstrates that Plaintiff had a severe lumbar spine impairment. The record shows that Plaintiff saw doctors over the course of several years for pain in her lumbar spine, limited range of motion in this region of her spine, and injections and other treatment for her pain. (AR 407, 412, 432, 447, 457, 460, 462, 476, 484, 495, 543, 545, 553-54, 575, 577, 599, 601, 608.) Based on these records and finding no clearly established medical evidence in the record that Plaintiff did not have a severe lumbar spine impairment, the court finds that the ALJ erred in not including this impairment at step two.

This error, however, was harmless. As the Commissioner notes, the ALJ considers all of a plaintiff's impairments in determining the plaintiff's RFC. (*See* ECF No. 26 at 5.) And indeed here, the ALJ considered the Plaintiff's lumbar spine impairment in his RFC analysis. AR 78. Specifically, the ALJ considered and gave some weight to Dr. Mumford's report. *Id.* Dr. Mumford examined Plaintiff and her lumbar spine, and he found that "there is no objective evidence of any significant mechanical problem affecting the cervical or lumbar spines." AR 562. Accordingly, Dr. Mumford found that Plaintiff could perform work at the medium exertion level. *See* AR 78, 563-64. The ALJ also considered the State Agency consultants' opinions and gave

them some weight. AR 77. The State Agency consultants also considered Plaintiff's back pain and found that Plaintiff could perform work at the medium exertion level. AR 149, 154. Thus, the ALJ's failure to consider Plaintiff's lumbar spine impairment "severe" was harmless because the ALJ still considered this impairment in his RFC analysis. *See Zettelmier v. Astrue*, 387 F. App'x 729, 731 (9th Cir. 2010) ("[A]ssuming that the ALJ erred by failing to conclude that Zettelmier's depression or back pain were severe at Step Two, such error was harmless because the ALJ addressed these conditions in connection with the assessment of Zettelmier's residual functional capacity at Step Four."). Furthermore, the ALJ found Plaintiff to have a lower RFC (light exertion level) than these doctors who assessed Plaintiff's lumbar spine issues and found Plaintiff could work at the medium exertion level. AR 74, 149, 154, 562-64. Accordingly, there is no reason to believe that had the ALJ considered Plaintiff's lumbar spine impairment "severe" at step two, the outcome would have been any different.

## III.    CONCLUSION AND RECOMMENDATION

Accordingly, IT IS THEREFORE RECOMMENDED that Plaintiff's motion to reverse and/or remand (ECF No. 21) be DENIED.

IT IS FURTHER RECOMMENDED that the Commissioner's cross-motion to affirm (ECF Nos. 26, 27) be GRANTED.

## IV.    NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: July 17, 2019

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE